UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


GENERAL CABLE CORPORATION,  :   NO. 1:05-CV-00083
                            :
        Plaintiff,          :
                            :   **OPINION AND ORDER**
    v.                      :
                            :
SHARON F. HIGHLANDER, et al., :
                            :
        Defendants.         :


        This matter is before the Court on Plaintiff General
Cable's Motion to Dismiss Counterclaims (doc. 49), Defendants
Sharon and Brent Highlander's Response in Opposition (doc. 63),
Defendant AGEM Enterprises International, Inc.'s Response in
Opposition (doc. 66), and Plaintiff's Reply (doc. 68). Also before
the Court is Plaintiff General Cable's Motion to Strike Defendant
AGEM's Counterclaim as to Robert Siverd and Jeffrey Myers (doc.
54), Defendant AGEM's Response in Opposition (doc. 67), and
Plaintiff's Reply (doc. 70). Finally, the Court will review
Plaintiff's Motion for Sanctions against Defendant AGEM and Its
Attorney Under Rule 11 (doc. 61), Defendant AGEM's Response in
Opposition (doc. 69), Plaintiff's Reply (doc. 73), and the
Declaration of Paul R. Boggs III in Support of AGEM's Opposition
(doc. 74). The Court held a hearing on these motions on March 15,
2006. On that same day, AGEM filed its Motion For Leave to File a
Second Amended Counterclaim (doc. 75), to which Plaintiff filed a

Response in Opposition (doc. 79).

For the reasons indicated herein, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Dismiss such that Sharon Highlander's breach of employment contract counterclaim and AGEM's counterclaims for tortious interference with contract, fraudulent misrepresentation, and negligent misrepresentation all survive Plaintiff's Motion, but all remaining counterclaims asserted by the Highlanders are dismissed. The Court further GRANTS Plaintiff's Motion to Strike, but DENIES Plaintiff's Motion for Sanctions and ADVISES the parties to act in accordance with the Introductory Statement on Civility which prefaces the Local Rules of the Southern District of Ohio. Finally, the Court DENIES AGEM's Motion For Leave to File a Second Amended Counterclaim (doc. 75)

**I. Background**

Plaintiff General Cable Corporation ("General Cable"), a Delaware Corporation with its headquarters in Highland Heights, Kentucky, brought its Amended Complaint, asserting diversity, on March 8, 2005, alleging that its former Vice President and Chief Information Officer, Sharon Highlander, conspired with co-Defendants to award contracts to Defendant AGEM Enterprises International, Inc., ("AGEM"), a Nevada corporation and Ohio citizen, under commercially unreasonable terms detrimental to its interests (doc. 8). Plaintiff alleges that Sharon Highlander

2

awarded such contracts in consideration for favorable terms in her and her husband Brent Highlander's business dealings with Defendant Stuart Hartman ("Hartman"), the owner of AGEM, thus breaching her fiduciary duty to General Cable (Id.).  Plaintiff further alleges that Defendants AGEM, Hartman, and Brent Highlander knew of Sharon Highlander's fiduciary duties, and aided and abetted her in the breach of such duties; that Sharon Highlander made material misrepresentations and concealed facts about her relationship with AGEM and Hartman, constituting fraud and/or intentional misrepresentation; and all Defendants engaged in a civil conspiracy aimed at injuring Plaintiff (Id.).

On November 2, 2005, the Court denied a number of motions by Defendants attacking Plaintiff's claims as well as seeking to disqualify Plaintiff's Counsel (doc. 30).  Subsequent to such Order, each respective Defendant filed an Answer, the Highlander Defendants filed Counterclaims, and Defendants filed Third Party Complaints against Plaintiff's in-house counsel, Robert Siverd, and outside counsel, Jeffrey Myers.  The Highlanders later withdrew their Third Party Complaints, but AGEM withdrew such Complaint only to refile it in the form of an Amended Counterclaim.

The counterclaims brought by Defendants are primarily premised upon statements made by Siverd and Myers, at a meeting on January 11, 2005, to the effect that the Defendants' actions were criminal.  In addition, Defendant Sharon Highlander alleges that

3

Defendants breached the stock option and stock incentive plans General Cable had awarded her while an employee by seizing all such assets upon her termination.  Sharon Highlander alleges Defendants had no just cause for her termination.  Defendant AGEM further alleges that General Cable's termination of its 2004 Agreement with AGEM constitutes a breach of contract; that General Cable was unjustly enriched by its dealing with AGEM; that General Cable tortiously interfered with AGEM's contracts with AGEM employees and contractors; and that General Cable made false statements to AGEM to entice AGEM to continue to work for General Cable while currying favor with AGEM employees so as to hire them directly.  Taken together, all of the counterclaims can be fairly summarized as follows:

> Defendant Sharon Highlander brings counterclaims for (1) breach of employment contract, (2) defamation, (3) outrageous conduct/emotional distress, (4) malicious prosecution.

> Defendant Brent Highlander brings counterclaims for (1) defamation, (2) outrageous conduct/emotional distress, and (3) malicious prosecution.

> Defendant AGEM brings counterclaims for (1) breach of contract, (2) unjust enrichment, (3) tortious interference with contract, (4) fraudulent misrepresentation, (5) negligent misrepresentation, and (6) declaratory judgment.

Plaintiff's pending motions attack each of the counterclaims; seek to strike AGEM's counterclaims as to Robert Siverd and Jeffrey Myers for failure to obtain leave to add them as new parties and for lack of jurisdiction; and further seek Fed. R.

Civ. P. 11 sanctions against Defendant AGEM and its attorney, Curt Hartman.

## II.  The Motion to Dismiss Standard

Plaintiff's Motion is governed by Fed. R. Civ. P 12(b)(1) and 12(b)(6).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction attacks a cause of action in one of two ways: facially or factually. Fed. R. Civ. P. 12(b)(1); United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack challenges the sufficiency of the complaint itself. On such an attack, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the non-moving party.  Ritchie, 15 F.3d at 598 (citing Scheuer v. Rhodes, 416 U.S. 232, 235-37, (1974)).  In contrast, a factual attack challenges the factual existence of subject matter jurisdiction.  The court reviewing such a motion need not presume that the factual allegations set forth in the complaint are true. Id.  Instead, the court may weigh any evidence properly before it. See Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990); Rogers v. Stratton Indus., Inc., 798 F.2d 913, 918 (6th Cir. 1986).  In the instant matter, Plaintiff challenges the facial existence of subject matter jurisdiction under Rule 12(b)(1), and the Court shall therefore take all material allegations as true and construe them in a light most favorable to Defendants.

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which states that, a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974).  Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957).  A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in Jones v. Sherrill, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint.  Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984).  The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.  Id. at 158; Conley v. Gibson, 355 U.S. 41 (1957).

Jones, 824 F.2d at 1103.

The admonishment to liberally construe the claim, in this case, a set of counterclaims, when evaluating a Rule 12(b)(6) dismissal, does not relieve the pleader of his obligation to

6

satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions.  Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969).  "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory."  Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985) (quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981), cert. dismissed, 462 U.S. 1125 (1983)); see also Sutliffe, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 654 (7th Cir. 1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121-23 (1969).  The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III.  Plaintiff General Cable's Motion to Dismiss Counterclaims (doc. 49), Defendants' Responses (docs. 63 & 66), and Plaintiff's Reply (doc. 68)**

   **A.  Failure to State a Claim**

       Plaintiff argues first that Defendants' counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to adequately state a claim upon which relief may be granted (doc. 49).

   **1. Highlanders' Defamation Counterclaims**

       Plaintiff argues that the defamation counterclaims are grounded in statements made by counsel at a January 11, 2005 meeting when counsel for Plaintiff met with Defendant Stuart Hartman to discuss the status of the AGEM and General Cable contract (doc. 63).  Several months before such meeting, on the same day that General Cable had terminated Sharon Highlander's employment, it had also advised Hartman that it intended to conduct an audit of AGEM's billing records (doc. 49).  In response, AGEM asserted that Plaintiff's request went beyond the scope of the audit provisions in the parties' contract, and did not provide any documents(Id.).  On December 31, 2004, General Cable advised AGEM by letter that it had thirty days in which to provide documents, and if AGEM refused, General Cable would terminate the parties' contract (Id.).

       At the January 11, 2005 meeting, the parties discussed their conflict, and Plaintiff's counsel stated that Highlander's

8

actions were criminal. Highlander's counterclaim alleges that such statements constitute defamation, and that "other defamatory statements were published. . . on other occasions."

Plaintiff argues that any statements made at the January 11, 2005 meeting are covered by the absolute litigation privilege, citing General Electric Company v. Sargent & Lundy, 916 F.2d 1119, 1126 (6th Cir. 1990). Plaintiff further argues that Defendants' ambiguous claims fail to show that such statements were even defamatory, or that they were published. As such, Plaintiff argues Defendants fail to state a claim, and their defamation counterclaims should be dismissed.

In response, Highlanders argue that Plaintiff improperly relies on General Electric, 916 F.2d 119, for the proposition that the absolute litigation privilege applies because in that case the rule was invoked in the context of a motion in limine, after the parties had the opportunity to develop the facts prior to the dismissal of the claim (doc. 63). Highlanders further argue that Plaintiff's action was not brought in good faith, that it is being maliciously prosecuted, and designed "to bury the Highlanders in extreme financial and emotional distress" (Id.). Accordingly, they argue no litigation privilege should apply (Id.). Moreover, they argue, the alleged defamatory statements were not made in connection to litigation because no litigation had commenced yet at the time the statements were uttered (Id.).

9

Plaintiff replies that Highlander's Defamation Claims are fatally flawed and must be dismissed (doc. 68). Plaintiff argues that Highlanders in no way meaningfully disputed that such claims lacked specificity (Id.). Plaintiff argues the Highlanders are intent on a fishing expedition when they have no factual basis to support a claim that defamatory statements were uttered or published (Id.).

The questions before the Court as to the defamation claims are whether Defendants have adequately stated a claim for defamation, and if so, whether the absolute litigation privilege applies. Under applicable Kentucky law, a prima facie case of defamation consists of 1) defamatory language, 2) about plaintiff, 3) which is published, and 4) which causes injury to reputation. Stringer v. Wal-Mart Stores, 151 S.W.3d 781, 793 (Ky. 2004). Defamatory statements are per se slanderous if they impute crime, and so it is clear that the alleged statement that the Highlanders engaged in criminal activity meets the first and second prongs of Stringer. Although Plaintiff argues that Counterclaimants fail to describe the manner of publication or to whom such statements were published, the requirement under Kentucky law is merely that the statements be "intentionally or negligently communicated to someone other than the party defamed." Stringer, 151 S.W.3d at 794. The statements in question here were communicated to Defendant Hartman, and he is obviously "someone other" than the Highlanders. Because

10

the statements impute crime and are <u>per</u> <u>se</u> slanderous, the fourth prong of <u>Stringer</u> is met. <u>Id</u>. at 794-795. The Court concludes that Defendants have adequately stated a claim for defamation in the Counterclaim based on the January 11, 2005 statements. However, no other defamatory language is articulated in the Counterclaim, and Counterclaimants' ambiguous claims concerning "other statements" on "other occasions" are bare assertions that fail to adequately plead defamation. The Court therefore dismisses claims premised on statements made at other occasions than January 11, 2005.

Having found that Counterclaimants have adequately pleaded a claim for defamation based on the statements made at the January 11, 2005 meeting, the Court must next determine whether such statements fall within the scope of the absolute litigation privilege. For the following reasons, the Court concludes such privilege applies.

In 1990, the Sixth Circuit concluded that Kentucky courts would recognize an absolute litigation privilege for statements made preliminary to litigation and in contemplation thereof. <u>General Electric Co. v. Sargent & Lundy</u>, 916 F.2d 1119 (6th Cir. 1990). The Court of Appeals of Kentucky subsequently confirmed such conclusion. <u>Rogers v. Luttrell</u>, 144 S.W.3d 841, 843-44 (Ky. Ct. App. 2004). The framework under which a court must determine whether the privilege applies is a two-part inquiry into whether,

11

1) the statement was made preliminary to a proposed judicial proceeding, and 2) the content of the statement has some relation to a proceeding that is contemplated in good faith and under serious consideration. General Electric Co., 916 F.2d 1119, 1127. In this case, the statements made at the January 11, 2005 meeting by Plaintiff's attorneys were clearly made in anticipation of potential litigation, which ultimately Plaintiff filed just under one month later. The parties were in the thick of a contract dispute, letters had been fired off by both sides, the parties had discussed anticipatory repudiation of the contract, and both sides could only reasonably anticipate that litigation would ensue should their discussions fail to resolve the dispute. Moreover, the content of the statements, pertaining to alleged actions of the Highlanders, clearly relate to the present lawsuit which alleges an unlawful conspiracy by the Highlanders with AGEM. For these reasons the Court has no difficulty in concluding that the statements were made preliminary to this litigation and that the statements are related to this litigation.

The Court rejects Counterclaimants' argument that the privilege should not apply because in their view, the General Electric case was in a different procedural posture as discovery had been completed in that case. Neither General Electric nor the Restatement Second of Torts provides any basis for Defendants' theory. The Court further rejects Defendants' argument that the

privilege should not apply because Plaintiff brought its action in bad faith.  The facts of the case show that Plaintiff contemplated this action in good faith, having communicated with AGEM by letter and by direct meeting in an attempt to address its concerns about an audit.  Under these facts the Court cannot impute bad faith to Plaintiff with Defendants' theory that the entire lawsuit is nothing but a scheme to "bury" Defendants.  The Court therefore dismisses Defendants' defamation counterclaims as falling within the scope of the absolute litigation privilege.

### 2. Highlanders' Intentional Infliction of Emotional Distress ("IIED") Claims

Plaintiff argues that Defendants' IIED counterclaims should be dismissed because under applicable Kentucky law, the wrongdoer's conduct must be "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress; and the emotional distress must be severe" (doc. 49, citing Kroger Co. v. Willgruber, 920 S.W.2d 61, 65 (Ky. 1996)).  Plaintiff argues that Highlanders have failed to allege anything beyond that Plaintiff's counsel made insulting or injurious statements––and that they fail therefore to satisfy any of the Willgruber elements for IIED (Id.).  Plaintiff argues the Highlanders have failed to even allege that such distress was severe enough to lead to psychological counseling or resulted in medical problems, which is necessary under Kentucky law for an IIED

13

claim (Id.).

Highlanders argue they need the opportunity to fully explore the evidence that will lend support to their IIED claims (doc. 63). They argue that Sharon Highlander was terminated from an executive position, denied stock options and incentive bonuses, and was slandered "to anyone who would listen," by the accusation that she was a criminal and a fraud (Id.). Moreover, argue Defendants, Brent Highlander, who had no involvement whatsoever with Plaintiff, was drawn into allegations that he too was a criminal (Id.). As a result, argue the Highlanders, they were placed into financial distress, and had to sell their family home (Id.).

Plaintiff replies that Highlander's IIED claims are completely frivolous as they fail to allege any conduct by General Cable or its representatives that rises near to the level of extreme and outrageous (doc. 68).

The Court already found that statements made at the January 11, 2005 meeting were privileged, and that allegations concerning other statements were too vague to withstand a motion to dismiss. It is difficult for the Court to conclude that privileged remarks made by attorneys in the context of a contract dispute can qualify as outrageous and intolerable. Even should that be possible, the Court finds Plaintiff's arguments well taken that Defendants fail to satisfy any of the Willgruber elements for

14

IIED, and fail to allege that IIED led them to psychological counseling or medical problems. Accordingly, the Court dismisses Defendants' counterclaims for IIED.

### 3. Highlanders' Malicious Prosecution Claim

Defendants conceded this claim because as a prerequisite, a claimant must show a termination of a proceeding in their favor. On January 31, 2006, Defendants voluntarily withdrew such claim (doc. 65). The Court therefore need not reach the parties' arguments concerning Defendants' counterclaims for malicious prosecution, as they are no longer at issue in the case.

### 4. AGEM's Claims for Fraudulent and Negligent Misrepresentation

AGEM alleges that Plaintiff General Cable misrepresented that it continued to honor the contract in order to induce AGEM to continue to perform while General Cable prepared to terminate the contract (doc. 49). Plaintiff argues AGEM's claims for fraudulent and negligent misrepresentation are barred as a matter of law by the economic loss doctrine (Id.). Under applicable Kentucky law, argues Plaintiff, a claimant who seeks to recover economic damages resulting from a failed commercial expectation, cannot also state a valid claim under tort law (Id. citing Strathmore Web Computer v. Sandem Mach. Ltd., 2000 U.S. Dist. LEXIS 22618, *18 (W.D. Ky. May 16, 2000)). Plaintiff argues Defendants are limited to pursuing their rights in contract (Id.). In the alternative, Plaintiff

argues AGEM's fraudulent misrepresentation claim should be dismissed for failure to make non-conclusory allegations presenting adequate facts to show the existence of a valid claim for fraudulent misrepresentation (Id.).

Under Kentucky law, argues Plaintiff, there are six elements to the tort of fraudulent misrepresentation, 1) that defendant made a material misrepresentation, 2) that it was false, 3) that when he made it he knew it was false, 4) that he made it with the intention of inducing plaintiff to act, or that it should be acted upon by plaintiff, 5) that plaintiff acted in reliance upon it, and 6) that plaintiff thereby suffered injury. (Id. citing Clark v. Danek Medical, Inc., 64 F.Supp.2d 652, 655 (W.D. Ky. 1999)). In this case, argues Plaintiff, Defendant merely makes broad allegations that do not constitute factual representations but rather legal positions taken by General Cable at the January 2005 meeting (Id.).

AGEM responds that the "economic loss doctrine" is not recognized under Kentucky law, as the Kentucky Supreme Court has not expressly adopted the rule (doc. 66, citing Presnell Contr. Managers, Inc. v. EH Contr. LLC, 134 S.W.3d 575,581 (Ky. 2004)). In fact, AGEM argues, the Kentucky Supreme Court in Presnell expressly rejected the theory that a contract claim precludes a tort claim based upon the same act (Id.). Regardless of the application of the economic loss doctrine to the present case, AGEM

16

argues, the Kentucky Supreme Court has recognized the recovery of economic loss based on the tort of negligent misrepresentation (<u>Id</u>.).

AGEM next argues that it sufficiently alleges a claim upon which relief may be granted based upon fraudulent misrepresentation (doc. 66). AGEM argues that Plaintiff "severely truncates" its allegations by omitting allegations that Mr. Siverd stated affirmatively on January 6, 2005, that General Cable intended to continue future performance of the 2004 agreement, even though General Cable only really intended to buy time so as to "curry AGEM employees to commence working for General Cable" (<u>Id</u>.). AGEM further argues it alleged that at the January 11, 2005 meeting Mr. Myers falsely assured it that General Cable intended to continue the 2004 agreement and that it had not repudiated the agreement. AGEM argues it alleged Plaintiff did so in order to be able to continue a course of action of currying AGEM employees and contractors to leave AGEM and start working for General Cable (<u>Id</u>.).

Plaintiff replies that the <u>Presnell</u> court did not specifically reject the economic loss doctrine because there was no contract in the <u>Presnell</u> case, that Kentucky appellate courts have implicitly adopted and applied the rule, <u>Falcon Coal Co. v. Clark Equipment Co.</u>, 802 S.W.2d 947 (Ky.App. 1990), and that the rule should be applied in this case (doc. 68). Plaintiff further argues

17

that the allegations on their face are that General Cable indicated
it would continue the 2004 contract and then later repudiated or
terminated the contract contrary to its representation that it
would not (Id.).    In this situation, argues Plaintiff, the
exclusive remedy is for alleged breach of contract (Id.).

Even absent the economic loss doctrine, Plaintiff argues
that AGEM's allegations fail to meet the elements required for both
its fraudulent misrepresentation and negligent misrepresentation
claims (Id.).    Plaintiff argues such allegations are only
statements as to future conduct, and under Kentucky law are not
actionable (Id. citing Res-Care, Inc. v. Omega Healthcare
Investors, Inc., 187 F.Supp2d 714, 717 (W.D.Ky 2001)("[A] statement
of a present intention to act in the future is only actionable when
it induces a plaintiff to enter into a contract.")  In this case,
argues Plaintiff, AGEM was already party to a contract with General
Cable in advance of the alleged misrepresentation (Id.).

Having reviewed the case law cited by the parties, the
Court finds that the application of the economic loss doctrine has
been most commonly in the products liability context.  Falcon Coal
v. Clark Equipment Co., 802 S.W.2d 947 (Ky. App. 1990) (Kentucky
court applied the economic loss doctrine in the products liability
context); Miller's Bottled Gas, Inc. v. Borg-Warner Corp., 955 F.2d
1043, 1050 (6th Cir. 1992) (court applied the doctrine in a
products liability context); Gooch v. E.I. Du Pont de Nemours &

18

Co., 40 F.Supp.2d 863 (W.D. Ky. 1999) (products liability); Strathmore Web Graphics v. Sanden Machine, Ltd., No. 3:99CV-345-5, 2000 WL 33975406 (W.D. Ky. May 16, 2000) (unpublished) (products liability); Ohio Casualty Insurance Co. v. Vermeer Mfg. Co., 298 F.Supp.2d 575 (W.D. Ky. 2004) (Heyburn, C.J.) (products liability). The most recent pronouncement by the Kentucky high court, Presnell Contr. Managers, Inc. v. EH Contr. LLC, 134 S.W.3d 575,581 (Ky 2004), indicates it views the application of the economic loss doctrine narrowly, such that the doctrine should not be applied to bar claims for fraudulent inducement.

In Presnell, the Kentucky Supreme Court adopted Section 522 of the Restatement of Torts, thus holding that under Kentucky law the tort of negligent misrepresentation is actionable, independent of contractual duties. 134 S.W.3d at 582-83. However, the Court also affirmed the dismissal of plaintiff's negligent supervision claim, finding that such claim did not articulate a claim independent of contractual duties. Id. The Court reasoned that "one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract." Id. at 579 (quoting Penco, Inc. v. Detrex Chemical Industries, Inc., 672 S.W.2d 948 (Ky. App. 1984)). In a concurring opinion, Justice Keller argued for the barring of defendant's negligent supervision claim because of the economic loss doctrine. Id. at 583. Justice Keller wrote that the Kentucky

19

Supreme Court should expressly adopt the economic loss doctrine and apply it to the case.  Id.  The majority, however, did not take Justice Keller's position.  Id.  Indeed, and of relevance to the case at bar, Justice Keller did not argue that the economic loss doctrine should have barred plaintiff's negligent misrepresentation claim.  Id.

After the Presnell decision, Chief Judge Heyburn of the Western District of Kentucky limited his prior holding in Ohio Casualty, 298 F.Supp.2d 575 (W.D. Ky. 2004), with respect to the applicability of the economic loss doctrine.  Davis v. Siemens Medical Solutions, USA, Inc., 399 F.Supp.2d 785 (W.D. Ky. 2005). Chief Judge Heyburn declined to expand the application of the economic loss doctrine beyond the products liability context to a misrepresentation claim in an employment contract context.  Id. Chief Judge Heyburn wrote:

> [N]o Kentucky court has held that the economic loss rule applies so expansively.  Instead the economic loss rule has been limited to apply to products liability cases . . . to business purchases . . . and to construction cases . . . To expand the rule so as to bar a fraudulent inducement claim in an employment contract without further guidance from the Kentucky courts would eviscerate the claim of fraudulent inducement.

Id. at 801.

The Court finds that in the light of Presnell, 134 S.W.3d at 582-83, and Chief Judge Heyburn's remarks in Davis, 399 F.Supp.2d at 801, AGEM has the better argument here.  Consequently, the economic loss doctrine should not apply to this case.

Accordingly, the Court will consider whether Defendants have adequately pleaded their claim for fraudulent misrepresentation.

In order to adequately plead the tort of fraudulent misrepresentation, "the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows:  a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon f) causing injury." United Parcel Service Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999).

Fraud is considered a "special matter" under Fed. R. Civ. P. 9 and is held to a heightened standard of pleading.  Fed. R. Civ. P. 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The Sixth Circuit has held that, when alleging fraud, a plaintiff must allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulted from the fraud." Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993) (internal citations omitted).

AGEM's First Amended Countercomplaint (doc. 45) adequately alleges the elements for fraud, even under the heightened standard of pleading in Fed. R. Civ. P. 9(b).  AGEM has

alleged the time (January 6 and 11, 2005) and place (the meetings) of the alleged misrepresentation, and has stated the alleged misrepresentation's content related to the contract dispute.  AGEM has also pleaded the fraudulent scheme (General Cable's alleged effort to lure AGEM employees away before breaching the contract), the intent (which Rule 9(b) allows to be averred generally) and the injury to AGEM.  The misrepresentation was material, as it went directly to the heart of whether the agreement would be honored or breached, and AGEM alleged both reliance and injury.

The Court next addresses Plaintiff's final argument, premised on federal case law interpreting Kentucky law, that "representations as to future conduct will not support a fraud claim," except when "made with the intent to induce the other party to enter into a contract."  Davis v. Siemens Medical Solutions USA, Inc., 399 F. Supp.2d at 800 (W.D. Ky. 2005)(citing Schroerlucke v. Hall, 249 S.W.2d 130 (Ky. 1952), and Mosely v. Owensboro Municipal Housing Comm'n, 252 S.W. 2d 880, 881 (Ky. 1952)); see also Res-Care, Inc. v. Omega Healthcare Investors, Inc., 187 F. Supp. 714, 718 (W.D. Ky. 2001)("a statement of present intention to act is only actionable when it induces a plaintiff to enter a contract")(citing Schroerlucke, 249 S.W.2d 130); and Hunt v. Deere, 18 F. Supp.2d 697, 702 (W.D. Ky. 1997)(citing Schroerlucke).  The rationale behind this doctrine is to prevent the expression of expectations, probabilities, or opinions about what will occur in

22

the future, which turn out to be false, from serving as a predicate for fraud.  37 Am. Jur. 2d §80 (West, 2006).  Plaintiff takes the position that there can be no actionable counterclaim for fraud because any representations it made to Defendant AGEM did not induce AGEM to enter into a contract; the parties already had a contract.

The federal cases on this issue uniformly cite to Schroerlucke v. Hall, 249 S.W.2d 130 (Ky. 1952).  Schroerlucke involved an action for fraudulent misrepresentation where plaintiffs were induced to purchase a house from defendant.  The court found that fraud should be inferred and relief given where defendant's false statements, based partly on existing facts and partly on promises in futurity, induced plaintiffs to enter into a contract whereby defendant acquired unconscionable and inequitable advantage.  Id. at 132.  Although the court stated the "general rule" (the same relied upon by Plaintiff here) that representations based on future conduct are not actionable, the court noted exceptions and limitations to such rule.  Id.  Indeed, the Court ultimately did not apply the "general rule," and cited to the Restatement on the question of exceptions.[1]  Id.  The Schroerlucke

_____

[1]The Court similarly finds reference to the current Restatement highly instructive on this question.  The Restatement of Law on Torts, Second, clearly elaborates that "A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."  Restatement 2d of Torts, § 530(1).  The comments to this section indicate that Section 530(1) "finds common

court further noted that representations made without the intention of performance can serve as the predicate for fraud.  Id.

The Court is not convinced that Plaintiff's reading of Schroerlucke adequately takes into consideration the fact that the case did not set such a hard-and-fast rule against fraud claims premised on future conduct.  In this case, Defendants allege that Plaintiff's counsel made representations that their contract would be honored, when really Plaintiff allegedly intended to terminate the contract.  Defendants allege Plaintiff made such representations so as to maintain its access to AGEM employees and subcontractors who it intended to hire.  These allegations are sufficient to support a claim that Plaintiff acted with the requisite frame of mind to except its actions from the general rule when it allegedly represented it would honor its contract with AGEM.  Plaintiff's alleged representations were more than mere opinions about the future upon which AGEM could not have reasonably relied.  The Court concludes therefore that AGEM's counterclaim for

---

application when the maker represents his intention to perform an agreement made with the recipient," and that "[s]ince a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such intention is fraudulent and actionable in deceit. . .this is true whether or not the promise is enforceable as a contract."  Id. at (1)(c). Similarly, Section 81 of American Jurisprudence provides that in some instances, "fraud may be predicated upon false representations involving futurity," when such representations are made intentionally.  "False representations as to future events will constitute fraud where. . .the future event is within the control of [the] person making the representation."  37 Am Jur 2d Fraud and Deceit § 81 (West, 2006).

fraudulent misrepresentation comports with Kentucky law and should not be dismissed.

**B.  Failure to Invoke Subject Matter Jurisdiction**

In addition to challenging the adequacy of Defendant's counterclaims on their face, Plaintiff further argues that with the exception of AGEM's claims for breach of contract, unjust enrichment, and declaratory judgment, all remaining claims should be dismissed for failure to invoke subject matter jurisdiction with respect to permissive counterclaims pursuant to Fed. R. Civ. P. 8(a)(1) (doc. 49).  The claims at issue, therefore, are Defendant Sharon Highlander's breach of employment contract claim, and AGEM's claims for tortious interference with contract, fraudulent misrepresentation, and negligent misrepresentation.

Sharon Highlander's breach of employment contract claim is clearly compulsory in nature as her termination was obviously linked to Plaintiff's concerns that she had violated her fiduciary duties, a core theory of Plaintiff's Complaint in this matter. Plaintiff's argument to the contrary is not persuasive.  The Court must construe Defendant's counterclaim allegations in a light most favorable to Defendant, and here Defendant Sharon Highlander alleges that Plaintiff claimed it had "just cause" for her termination, which Defendant asserts is untrue.  Sharon Highlander's breach of contract claim involves the same parties, witnesses, and  presents similar legal and factual questions to

those at stake in Plaintiff's claim that she violated her fiduciary duties in the context of her employment. Compulsory counterclaims require no independent source of subject matter jurisdiction. Owner-Operator Independent Drivers Assoc., Inc. v. Arctic Express, Inc., 238 F.Supp.2d 963, 968 (S.D. Ohio, 2003)(citing Stewart v. Dollar Federal Savings and Loan, 523 F. Supp. 218, 224 (S.D. Ohio, 1981)); Webb v. Just in Time, Inc., 769 F. Supp. 993, 998 (W.D. Mich. 1991). Accordingly, Sharon Highlander's breach of contract claim properly falls within the subject matter jurisdiction of the Court.

As for AGEM's counterclaims, Plaintiff similarly attacks these as permissive counterclaims for which AGEM has failed to invoke the Court's subject matter jurisdiction (doc. 49). AGEM responds that its underlying business relationship with Plaintiff constitutes an adequate basis for such claims to qualify as compulsory (doc. 66). Plaintiff argues that under Maddox v. Kentucky Fin. Co., Inc., 736 F.2d 380, 382 (6th Cir. 1984), AGEM's claims for tortious interference with contract, fraudulent misrepresentation, and negligent misrepresentation are not compulsory but rather permissive counterclaims (docs. 49, 68).

The Maddox court provided four factors to aid in the determination of whether a counterclaim "arises out of the same transaction" so as to constitute a compulsory counterclaim:

> 1) Is there a logical relationship between the two claims?

26

      2) Are the issues of fact and law raised by the claim and counterclaim largely the same?

      3) Would <u>res</u> <u>judicata</u> bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

      4) Would substantially the same evidence support or refute both the claim and counterclaim?

736 F.2d at 382. Plaintiff's claims are grounded in the allegation that Defendants conspired to award commercially unreasonable contracts to AGEM in 2003 and 2004. AGEM's counterclaims are based on Plaintiff's alleged attempts in January 2005 to hire AGEM employees and contractors and Plaintiff's alleged misrepresentations regarding the continued performance of the contract.

      The Court finds that the nature of the claims and the counterclaims present distinctive legal and factual questions, arise at different times, involve different sets of evidence, and that AGEM's counterclaims would not be barred by <u>res</u> <u>judicata</u>. An alleged conspiracy among the Highlanders and AGEM presents different questions than alleged misrepresentations by General Cable to AGEM in order to buy time to curry favor with AGEM employees and contractors. For these reasons, the Court concludes that AGEM's counterclaims are permissive. The Court further concludes that AGEM has sufficiently invoked the Court's subject matter jurisdiction over such permissive counterclaims. The facts alleged in AGEM's First Amended Counterclaim satisfy the Court that diversity requirements and jurisdictional amount in controversy are

met in this instance.

Plaintiff further argues AGEM fails to establish diversity jurisdiction for its counterclaims because the Highlanders, who were citizens of Ohio when Plaintiff filed its case, have become citizens of Kentucky (doc. 49).  Plaintiff argues this move destroys diversity citizenship as to all counterclaims, because Plaintiff is a citizen of Kentucky (<u>Id</u>.).  Plaintiff cites to <u>SHR Ltd. Partnership v. Braun</u>, 888 F.2d 455, 456 (6th Cir. 1989), which states that "[d]iversity jurisdiction attaches only when all parties on one side of the litigation are of different citizenship from all parties on the other side of the litigation" (<u>Id</u>.).  The Court rejects Plaintiff's proposition, as <u>Braun</u> neither involved a counterclaim asserted against the original plaintiff in the matter, nor a party who moved to become non-diverse, nor a situation where the non-diverse party is not subject to, nor asserting the counterclaim.  Simply put, Plaintiff misapplies the principle of <u>Braun</u> to the facts of this matter.

The Court finds a better approach is one analogous to that taken by the Eastern District of Michigan in <u>Webb v. Just in Time, Inc.</u>, 769 F.Supp. 993, 996 (E.D. Mich. 1991).  In <u>Webb</u>, the Court had jurisdiction over an original action and a counterclaim, but diversity was destroyed when the cases were combined.  <u>Id</u>.  The court reviewed case law showing that diversity is not destroyed by a defendant impleading a third party of same citizenship as

28

plaintiff pursuant to Fed. R. Civ. P. 14.  _Id_. citing Fidelity & Deposit Co. v. Sheboygan Falls, 713 F.2d 1261, 1266 (7th Cir. 1983), Fawvor v. Texaco, Inc., 546 F.2d 636, 638 (5th Cir. 1977), Stemler v. Burke, 344 F.2d 393 (6th Cir. 1965), Smith v. Whitmore, 270 F.2d 741 (3rd Cir. 1959).  The Eastern District of Michigan found "no compelling reasons to distinguish between a party joined pursuant to Rule 13(h),and one brought in under Rule 14 for purposes of determining diversity of citizenship" _Id_. at 997.  Fed. R. Civ. P. 13(h) provides for joinder of persons subject to a counterclaim or cross-claim who were not parties to the original action.  The lack of a compelling reason to depart from Rule 14 jurisprudence would seem even stronger in the case, as here, where the counterclaim is asserted against a party to the original action.  Of further importance, the Webb court noted that the two non-diverse parties in the consolidated case had not asserted any rights against one another.  _Id_.

Each counterclaim has a separate identity from the underlying claim, and thus diversity should be determined on a claim by claim basis.  Webb, 769 F. Supp. at 996.  AGEM's permissive counterclaims do not involve the Highlanders, but are brought exclusively by AGEM against Plaintiff.  These permissive counterclaims have an independent basis for the court's jurisdiction, as AGEM and Plaintiff are diverse.  These claims could be asserted by AGEM in a discrete cause of action against

General Cable.  It simply would not comport with judicial economy or the interests of justice to force AGEM to litigate its claims in a separate proceeding.

For these reasons, the Court rejects Plaintiff's argument that the Court lacks subject matter jurisdiction over Sharon Highlander's compulsory counterclaim for breach of contract, and AGEM's permissive counterclaims for  tortious interference with contract, fraudulent misrepresentation, and negligent misrepresentation.  The Court, however, finds defects in AGEM's Complaint as to the individual attorneys Robert Siverd and Jeffrey Meyers, but these concerns will be addressed below in the discussion on Plaintiff's Motion to Strike (doc. 54).

**IV.  Plaintiff's Motion to Strike Defendant AGEM's Counterclaim as to Robert Siverd and Jeffrey Myers (doc. 54), AGEM's Response (doc. 67), and Plaintiff's Reply (doc. 70)**

The Court need not reach all of the arguments raised by the parties in relation to Plaintiff's Motion to Strike, because as a preliminary matter it finds that a motion to strike is an appropriate procedural motion, <u>Spurlock v. F.B.I.</u>, 69 F.3d 1010, 1016 (9th Cir. 1995), and because the Court has already found AGEM's counterclaims permissive in nature.  Thus, the analysis is simplified.  Permissive counterclaims, as noted above, require an independent jurisdictional basis.  AGEM is an Ohio citizen, and so is Robert Siverd, against whom AGEM would directly assert its state-law counterclaims.  The Court therefore has no jurisdiction

over such counterclaims, and finds Plaintiff's Motion to Strike well-taken as to AGEM's claims against Robert Siverd.

As for Jeffrey Myers, Plaintiff argues the Court lacks personal jurisdiction, because AGEM has not adequately demonstrated that Myers, a resident of Pennsylvania who performed legal services in Kentucky, falls under the jurisdiction of this federal court sitting in Ohio (doc. 54). In response, AGEM argues the Court has personal jurisdiction over Myers because he is a lawyer with Blank Rome, which has an office in Cincinnati (doc. 67). Under Resolution Trust Corp. v. Deloitte & Touche, 822 F. Supp. 1512 (D. Colo. 1993), AGEM argues personal jurisdiction over a partnership establishes jurisdiction over non-resident individual partners (Id.). AGEM further contends that though Myers works for Blank Rome in Philadelphia, and could have flown to Kentucky for the January 11, 2005 meeting, he probably came to the Cincinnati offices of Blank Rome (Id.).

The Court finds AGEM's argument unpersuasive. Its contention that Myers may have come to the Cincinnati office is complete speculation. The Court does not find AGEM's reliance on Resolution Trust persuasive, as AGEM has not made even a minimal showing that Myers purposefully availed himself of the privilege of acting in Ohio, or had the requisite minimum contacts with Ohio to satisfy due process. The Court concludes it lacks both specific and general jurisdiction over Mr. Myers. Bird v. Parsons, 289 F.3d

31

865, 873 (6th Cir. 2002), <u>Diebold, Inc. v. Firstcard Fin. Servs., Inc.</u>, 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000).  Accordingly, the Court finds Plaintiff's Motion to Strike well-taken as to Jeffrey Myers.

**V.  Plaintiff General Cable's Motion for Sanctions Against AGEM and its Attorney Curt Carl Hartman for violation of Fed. R. Civ. P. 11 (doc. 61), Defendant's Response (doc. 69), and Plaintiff's Reply (doc. 73)**

Plaintiff moves for sanctions against AGEM and its attorney as in its view there was no basis for the counterclaims asserted against Siverd and Myers, because the court lacks subject matter jurisdiction because Siverd is an Ohio citizen, and because AGEM failed to explicitly allege its claims exceed $75,000 (doc. 61).  Plaintiff argues all the defects with the Amended Counterclaim show that its attorney made a conscious decision to disregard the civil rules and assert claims that violate the mandates of Rule 11 (<u>Id</u>.).  Plaintiff further argues AGEM's action is an attempt to "end run" around the Court's previous ruling refusing to disqualify Blank Rome Counsel (<u>Id</u>.).  In response, AGEM argues that because Plaintiff refused to even discuss its Motion for Sanctions with its counsel, and in AGEM's view Plaintiff has consistently requested sanctions without basis, it is rather Plaintiff who should be subject to Rule 11 Sanctions (doc. 69).

The Court finds the arguments of both parties for Rule 11 sanctions overblown.  The standard for imposition of such sanctions

32

is narrow, and appropriate only where a claim or motion is patently frivolous. Neither AGEM's arguments nor any of its motion practice here qualifies as objectively unreasonable. <u>First Bank of Marietta v. Hartford Underwriters Ins. Co.</u>, 875 F.2d 1224, 1229 (6th Cir. 1989). The Court sees no attempted "end run" around its previous ruling. As for AGEM's contention, the Court finds it disturbing that Plaintiff's counsel apparently refused to discuss its Motion for Sanctions prior to filing. Both parties are strongly encouraged to act in accordance with the Introductory Statement on Civility which prefaces the Local Rules of the Southern District of Ohio.

**VI. AGEM's Motion for Leave to File a Second Amended Counterclaim (doc. 75), and General Cable's Response in Opposition (doc. 79)**

In light of the Court's grant of Plaintiff's Motion to Strike Siverd and Myers as Defendants, and because General Cable will be liable for any tortious acts of its agents, the Court does not find well-taken AGEM's motion for leave to Amend its Counterclaim to add Blank Rome, LLP, as a counterclaim Defendant. This case has progressed beyond the early stages, and such an addition at this point would not comport with the interests of justice, but would rather complicate the resolution of this matter.

**VII. Conclusion**

For the reasons indicated herein, the Court GRANTS IN PART and DENIES IN PART Plaintiff General Cable's Motion to Dismiss

33

Counterclaims (doc. 49), such that all of the Highlanders' counterclaims for defamation and outrageous conduct/emotional distress ARE DISMISSED, but that Sharon Highlander's breach of employment contract counterclaim and AGEM's counterclaims for tortious interference with contract, fraudulent misrepresentation, and negligent misrepresentation all survive Plaintiff's Motion. The Court further GRANTS Plaintiff General Cable's Motion to Strike Defendant AGEM's Counterclaim as to Robert Siverd and Jeffrey Myers (doc. 54), but DENIES Plaintiff's Motion for Sanctions Against AGEM and Its Attorney Under Fed. R. Civ. P. 11 (doc. 61), and DENIES AGEM's Motion for Leave to File a Second Amended Counterclaim (doc. 75). This matter shall proceed on Plaintiff's claims, all of AGEM's counterclaims against General Cable, and Sharon Highlander's breach of contract counterclaim.

        SO ORDERED.


Dated:   May 15, 2006        /s/ S. Arthur Spiegel
                             S. Arthur Spiegel
                             United States Senior District Judge